**Link to doc 18 & 29**

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-0099 PSG (MANx) | Date | April 3, 2009 |
|---|---|---|---|
| Title | Aries Associates, Inc. v. L-3 Communications Holdings, Inc., et al. | | |

Present: The Honorable Philip S. Gutierrez, United States District Judge

| Wendy K. Hernandez | Not Present | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

Attorneys Present for Plaintiff(s):            Attorneys Present for Defendant(s):

Not Present                                     Not Present

**Proceedings:** (In Chambers) Order Granting in Part and Denying in Part Plaintiff's Motion for Preliminary Injunction

Before this Court is Plaintiff's motion for preliminary injunction. The Court finds the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; Local R. 7-15. After considering the moving papers, the Court GRANTS IN PART and DENIES IN PART the motion.

I.     Background

The parties are familiar with the facts of this matter; thus, they will only be briefly summarized here. This action primarily concerns formulations designed to effectively neutralize biological warfare agents and chemical warfare agents at extreme temperatures. One of these capabilities, a formulation called *AeROS*™ 501/BIT™-500,[1] is at the heart of this case.

On January 6, 2009, Aries Associates, Inc. ("Aries") filed a complaint against L-3 Communications Holdings, Inc. ("L-3 Holdings"), L-3 Communications Holdings ("L-3 Communications), and Fernando Faria ("Faria"), the President of the Advanced Technology Group in L-3's Products Group (collectively, "L-3"), alleging, among other things, violations of the Lanham Act, breach of contract, trade secret misappropriation, and unjust enrichment. Two months later, on March 2, 2009, Aries filed the present Motion for Preliminary Injunction. In its

---

[1] In its briefs, the plaintiff refers to this formulation as *AeROS*™ 501. The defendants, by contrast, refers to this formulation as BIT™-500. For ease of presentation, this Court will refer to this formulation as *AeROS*™ 501/BIT™-500.

**Link to doc 18 & 29**

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-0099 PSG (MANx) | Date | April 3, 2009 |
|---|---|---|---|
| Title | Aries Associates, Inc. v. L-3 Communications Holdings, Inc., et al. | | |

Motion, Aries requests an Order enjoining and restraining L-3 and each of its officers, agents, employees, representative, and all persons acting in concert or participating with them from performing directly or indirectly any and all of the following acts:

[1] Using, disclosing, disseminating, or attempting to use, disclose or disseminate, any trade secrets of ARIES, including its proprietary block co-polymer and any *AeROS*™ Solutions of Formulations (whether or not made using ARIES' proprietary block co-polymer);

[2] Using BIT-500 to describe any *AeROS*™ Solution or Formulation;

[3] Using ARIES' registered *StarBright* trademark in any marketing or sales materials, presentations, bid proposals, contract reports, or any other documents prepared in furtherance of offering its decontamination products for sale;

[4] Representing that the formulations marketed as BIT-500 were invented or developed by L-3;

[5] Representing that any *AeROS*™ Solution or Formulation is owned by L-3;

[6] Representing that ARIES and/or Dr. Michael Conrad misappropriated the formulations marketed as BIT-500 from L-3;

[7] Representing that ARIES has no right to sell its *AeROS*™ Solutions or Formulations; or

[8] Representing that L-3 or the United States government has rights in any *AeROS*™ Solution or Formulation.

II.     Legal Standard

      "The traditional equitable criteria for granting preliminary injunctive relief are (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if the preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases)." *Dollar Rent A Car v. Travelers Indem. Co.,* 774 F.2d 1371, 1374 (9th Cir. 1985). "Alternatively, a court may issue a preliminary

**Link to doc 18 & 29**

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-0099 PSG (MANx) | Date | April 3, 2009 |
|---|---|---|---|
| Title | Aries Associates, Inc. v. L-3 Communications Holdings, Inc., et al. | | |

injunction if the moving party demonstrates '*either* a combination of probable success on the merits and the possibility of irreparable injury *or* that serious questions are raised and the balance of hardships tips sharply in his favor.'" *Martin v. Int'l Olympic Comm.,* 740 F.2d 670, 675 (9th Cir. 1984) (quoting *William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.,* 526 F.2d 86, 88 (9th Cir. 1975) (emphasis in original)).

III.   Discussion

    A.   Strong Likelihood of Success on the Merits

The first step in this analysis is to determine whether Aries can demonstrate "a strong likelihood of success on the merits." *Dollar Rent A Car*, 774 F.2d at 1374; *Ashcroft v. Am. Civil Liberties Union*, 542 U.S. 656, 665, 124 S. Ct. 2783, 159 L. Ed. 2d 690 (2004). The Court takes this inquiry up with respect to five of the claims Aries asserts against L-3.

        1.   Aries' Trade Secrets Claim

The Court first considers whether Aries is likely to succeed on its trade secrets claim. To prevail on a trade secret claim under California law, a plaintiff must prove (1) the existence of a trade secret, and (2) misappropriation of the trade secret. *See* Cal. Civ. Code § 3426.1(b). It is Plaintiff's position that Defendant misappropriated Plaintiff's trade secrets by (1) disclosing the ingredients of *AeROS*™ 501/BIT™-500 to a competitor of Plaintiff, *see Conrad Decl.* ¶ 44, and (2) by presenting Plaintiff's technologies, including its *StarBright*™ dyes and *AeROS*™ 501/BIT™-500 as its own at a January 13, 2009 meeting with the government. *See Montulli Decl.* ¶ 35. L-3, however, contends that this claim fails because it, and not Aries, owns any trade secrets in *AeROS*™ 501/BIT™-500.

As an initial matter, the Court notes that there is apparently no dispute that *AeROS*™ 501/BIT™-500 or the *StarBright*™ dyes are trade secrets. Nor is there a dispute that Defendant disclosed the ingredients of *AeROS*™ 501/BIT™-500 to a competitor and that it presented these two technologies at the January 13, 2009 meeting. Rather, the dispute centers over what is really at the heart of this case: who owns *AeROS*™ 501/BIT™-500?

As evident from the bounty of evidence submitted by both parties, as well as the multiple pages of briefs devoted to this issue, the origin of *AeROS*™ 501/BIT™-500 is hotly contested. L-3 apparently takes the position that one of its employees, Jessie Kater ("Kater"), developed the

**Link to doc 18 & 29**

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-0099 PSG (MANx) | Date | April 3, 2009 |
|---|---|---|---|
| Title | Aries Associates, Inc. v. L-3 Communications Holdings, Inc., et al. | | |

origin of *AeROS*™ 501/BIT™-500 "from the ground up" with the help of Michael Conrad ("Conrad"), a physical chemist and the owner of Aries who worked with L-3 from 2006 until 2008. *Opp.* 4:27-5:1. Aries, on the other hand, maintains that Conrad developed *AeROS*™ 501/BIT™-500 prior to ever being contacted by L-3 in July 2006. In support of their respective positions, both parties have submitted multiple declarations and exhibits, including the laboratory notebooks of Conrad and Kater. For the reasons that follow, the Court finds that, based on the record before it, it cannot conclude that there is a "strong likelihood" that Aries will succeed on the merits of its trade secrets claim insofar as it relates to *AeROS*™ 501/BIT™-500.[2]

Essentially, what is occurring here is a classic tale of "he said/she said." In support of its position that L-3 owns *AeROS*™ 501/BIT™-500, L-3 relies heavily on three different sets of evidence: (1) the Declarations of Kater, Jeanette Coté ("Coté") (L-3's Senior Contracts Administrator), and Kurt Klimpel ("Klimpel"), who replaced Louis T. Montulli ("Montulli") as director of L-3's Binary Ionization Technology program; (2) the laboratory notebooks of Kater; and (3) statements in various documents that indicate that L-3 has at least some ownership interest in *AeROS*™ 501/BIT™-500. Each of these sets of evidence is examined in turn.

Kater's Declaration tells a story wherein he, with the assistance of Conrad, developed *AeROS*™ 501/BIT™-500 while both he and Conrad worked for L-3. *See Kater Decl.* ¶¶19-52. If Kater's testimony is true, then it follows that since Conrad signed a contract that assigned to L-3 any intellectual property in *AeROS*™ 501/BIT™-500 resulting from his work with L-3, L-3, and not Aries, owns *AeROS*™ 501/BIT™-500.[3] Importantly, certain documents submitted by both parties substantiate this claim. For instance, L-3 points to a statement made by Montulli during the summer of 2008 in a document entitled "Rebuttal Comments directly pertaining to Mr. Faria's Performance Appraisal of Dr. Louis Montulli." Therein, Montulli stated, "During

---

[2] L-3 does not contest that it improperly disclosed the *StarBright*™ dyes. Thus, it apparently concedes that there is a strong likelihood that Aries will succeed on its trade secrets claim as it relates to its *StarBright*™ dyes.

[3] Conrad signed a Technical Service Agreement that included the following provision:

> [A]ll work products [ARIES] develops under this Agreement, . . . shall be considered "work made for hire" and that [L-3] shall be considered the person for whom the work was made, [ARIES] agrees, as necessary, to assign all right and interest, including copyrights, to [L-3].

*Coté Decl*, Ex. I.

**Link to doc 18 & 29**

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-0099 PSG (MANx) | Date | April 3, 2009 |
|---|---|---|---|
| Title | Aries Associates, Inc. v. L-3 Communications Holdings, Inc., et al. | | |

the last two years, under my leadership, we have developed a break-through decontamination technology called BIT-500." *Montulli Decl.*, Ex. 3.[4] L-3 also points to Exhibit A of a Collaborative Agreement, dated March 11, 2007, in which "BIT™-500" is described as a "Joint Technology." *See Conrad Decl.*, Ex. 19. Lastly, L-3 points to a statement made in a report drafted by Montulli in which Montulli states that L-3, in collaboration with Aries and Sandia Corporation ("Sandia"), had "invented and characterized the BIT™-500 chemistry and the BIT™-500 System . . . ." *Coté Decl.*, Ex. V, p. 146.

The notebooks submitted by L-3 further substantiate its claim. These notebooks were kept by Kater while he and Conrad allegedly developed *AeROS*™ 501/BIT-500. Although not extremely meticulous and often undated and unsigned, these notebooks nonetheless detail the development of *AeROS*™ 501/BIT-500. *See Kater Decl.*, Exs. A & B.[5]

Aries attempts to cast doubt on the veracity of this version of events by relying heavily upon (1) the Declarations of Conrad, Montulli, Tracy Basler ("Basler") (a former L-3 employee), and Smith; (2) Conrad's laboratory notebooks; and (3) statements in various documents that indicate that Aries owns *AeROS*™ 501/BIT-500. Beginning first with the Declarations, Conrad testifies that by July 2006, he "had completed [his] research, development and testing of the *AeROS*™ Technologies and begun exploring commercial opportunities." *Conrad Decl.* ¶ 42. Likewise, Montulli testifies that during several meetings with Faria, he repeatedly informed him of the importance of finalizing a license agreement with Aries, especially in light of representations that L-3 made to DARPA , such as that Conrad was the inventor of *AeROS*™ 501/BIT-500 and that L-3 had a license from Aries for such rights. *Id.* at ¶ 21. This testimony is further corroborated by Smith, who testifies that in 2005, Conrad told him about the *AeROS*™ technology, *Smith Decl.* ¶ 5, and Basler, who testifies that it was clear to her, at least in February

---

[4] Presumably, by using the first-person-plural point of view, Montulli is confirming that L-3 at least in part created *AeROS*™ 501/BIT™-500.

[5] There is a dispute over exactly why Kater's notebooks are incomplete. Kater testifies that his notebook is not that detailed because Conrad and Montulli did not care about the state of his notebooks. *Kater Decl.* ¶ 58. He also testifies that the majority of data was imported into a notebook maintained by Aries. *Id.* at ¶ 59. Aries, however, disputes this account. According to Conrad, Kater's lack of experience contributed to his inability to properly maintain a laboratory notebook. *Conrad Supp. Decl.* ¶ 4. Conrad also testifies that he stressed the importance of maintaining an accurate notebook. *Id.* at ¶ 5.

**Link to doc 18 & 29**

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-0099 PSG (MANx) | Date | April 3, 2009 |
|---|---|---|---|
| Title | Aries Associates, Inc. v. L-3 Communications Holdings, Inc., et al. | | |

or March 2007, that the *AeROS*™ formulations were confidential and proprietary information of Aries. *Basler Decl.* ¶ 6.

In further support of its position, and in further attempt to call into question L-3's version of events, Aries juxtaposes Conrad's laboratory notebooks with Kater's. Like Kater's notebooks, Conrad's notebooks track the progress made in developing *AeROS*™ 501/BIT™-500. *See Conrad Decl.*, Exs. 2-11. However, unlike Kater's notebooks, Conrad's notebooks are recorded in meticulous detail. *See id.* Furthermore, unlike Kater's notebooks, each page of Conrad's notebooks is signed and dated. Moreover, Conrad's notebooks, unlike Kater's, do not contain gaps of presumably relevant periods of time. *Compare Conrad Decl.*, Exs. 2-11 *with Kater Decl.*, Exs. A & B. Equally important is an exhibit submitted by Aries that compares the formulation of *AeROS*™ 501/BIT™-500, as recorded in Conrad's notebook on June 15, 2005, with the formulation of *AeROS*™ 501/BIT™-500 as of today. *See Conrad Decl.*, Ex. 6. These formulations are identical. *Id.*[6]

Lastly, Aries points to a variety of statements contained in various business-related documents that support its position. For example, in the Demonstration/Validation Testing of BIT-500 and Post Attack Agent Markers proposal ("TACTIC II proposal") submitted by L-3 in November 2007, L-3 apparently admits that Conrad is the inventor of the technology in dispute. *See id.*, Ex. 21 at p.78 ("Dr. Michael Conrad from ARIES Associates will devote 100% to this project. He is the inventor of the BIT-500 Technologies . . . ."). Also, in August 2008, Faria and Conrad made a presentation at the Pentagon. During that presentation, the materials submitted by Faria and Conrad explain that the "BIT™-500 system uses the AeROS decontamination chemistries and solutions that were originally invented for Pharmaceutical applications," thus implying that the *AeROS*™ formulations, including *AeROS*™ 501/BIT™-500, existed before L-3 and Aries began collaborating on various projects. *Conrad Decl.* ¶ 95.

In the end, the Court is left with two very different tales. L-3 pitches a story wherein a young man with only three years of chemical engineering experience succeeded in what both parties concede is an incredibly difficult project: developing a complex chemical and biological weapons decontamination system capable of functioning in extreme temperatures. Aries, on the other hand, tells a tale where a physical chemist with over thirty years of experience in physical chemistry, molecular biochemistry, radioisotope chemistry, and spectroscopy, and who has been named an inventor or co-inventor on over twenty United States patents and patent applications,

---

[6] L-3 strongly contests the reliability of Conrad's notebooks. *See Opp.* 13:11-16:17.

Link to doc 18 & 29

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-0099 PSG (MANx) | Date | April 3, 2009 |
|---|---|---|---|
| Title | Aries Associates, Inc. v. L-3 Communications Holdings, Inc., et al. | | |

developed, over the course of a number of years, the same chemical and biological weapons decontamination system capable of functioning in extreme temperatures. What is most important, though, is that both parties have submitted a bounty of reliable evidence in support of their respective positions. Now even if the Court were to concede that Aries' version of events is more credible than L-3's, what is important here is that, based on the evidence it submitted, L-3's version of events is also credible. It bears repeating that the ultimate question here is whether Aries has demonstrated a strong likelihood that it, and not L-3, owns the technology in dispute. Based on the record before it, the Court cannot answer this question in the affirmative. For that reason alone, Aries' trade secrets claim must fail, at least insofar as it relates to L-3's alleged disclosure of *AeROS*™ 501/BIT™-500.

   2. <u>Aries' Breach of Contract Claim</u>

Next the Court considers whether Plaintiff has demonstrated a likelihood of success on its breach of contract claim. To prevail on a breach of contract claim under Delaware law,[7] a plaintiff must establish (1) a contractual obligation; (2) a breach of that obligation by the defendant; and (3) a resulting damage to the plaintiff. *H.M. Wexford LLC v. Excorp, Inc.*, 832 A.2d 129, 140 (Del. 2003).

On August 3, 2006, Coté, L-3's Senior Contracts Administrator, and Conrad entered into a "Mutual Non-Disclosure Agreement" ("NDA"). *See Conrad Decl.*, Ex. 13. In relevant part, the NDA provides: "The receiving party agrees that it will not disclose the PROPRIETARY INFORMATION or communicate any of the information, theories, and knowledge contained therein to any third person whatsoever, either in whole or in part." *Id.* at p. 1. Neither party disputes that this provision imposes upon L-3 a contractual obligation. What is in dispute, though, is whether L-3 breached this obligation.

Aries points to two specific examples of when L-3 allegedly breached this obligation: the disclosure of the ingredients of *AeROS*™ 501/BIT™-500 to Battelle, a competitor of Aries, in December 2008, *see Conrad Decl.*, Ex. 4, and the disclosure of *AeROS*™ 501/BIT™-500 in L-3's January 2008 bid proposal, which was made in response to the Joint Project Manager Decontamination's ("JPM-Decon") request for information ("RFI"). *See Montulli Decl.* ¶ 33.

---

[7] The Non-Disclosure Agreement contains an explicit choice-of-law provision indicating that the Agreement is to be governed and construed in accordance with the laws of the State of Delaware. *See Conrad Decl.*, Ex. 13, ¶ 7.

**Link to doc 18 & 29**

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-0099 PSG (MANx) | Date | April 3, 2009 |
|---|---|---|---|
| Title | Aries Associates, Inc. v. L-3 Communications Holdings, Inc., et al. | | |

Defendant raises two arguments as to why Plaintiff is unlikely to succeed on this claim. However, the Court need not address these arguments because they need only be reached if the Court finds that Aries owns *AeROS*™-501/BIT™-500.

Since Aries has failed to demonstrate a strong likelihood that it owns *AeROS*™ 501/BIT™-500, it follows that it has also failed to demonstrate a strong likelihood that L-3 breached the NDA. After all, if L-3, and not Aries, owns *AeROS*™ 501/BIT™-500, then L-3 has every right to disclose its own proprietary information to Battelle and the government. Such action would not violate the NDA.

        3.    <u>Aries' Tortious Interference with Prospective Economic Advantage Claim</u>

The Court next considers whether Aries has demonstrated a strong likelihood of success on its claim for tortious interference with prospective economic advantage. To prevail on a tortious interference with prospective economic advantage claim, a plaintiff must demonstrate the following: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant. [citations]." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153, 131 Cal. Rptr. 2d 29 (2003). Furthermore, "a plaintiff seeking to recover damages for interference with prospective economic advantage must plead and prove as part of its case-in-chief that the defendant's conduct was 'wrongful by some legal measure other than the fact of interference itself.'" *Id.* (quoting *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 393, 45 Cal. Rptr. 2d 436 (1995)).

Aries argues that it is likely to prevail on this claim because of a series of incidents that occurred between L-3 and William Conklin ("Conklin"), the president of LSS, a company that Aries had worked with in the past.[8] According to Aries, on November 2, 2008, Faria called Conklin and represented to Conklin that *AeROS*™ 501/BIT™-500 belonged to L-3, not Aries. *See id.* at ¶ 109. Faria further represented that Aries had no rights to offer this technology for sale. *Id.* Later, in a letter from Faria to Conklin, Faria accused Conrad of trying "to sell the

---

[8] Conrad testifies that Aries had an ongoing business relationship with LSS for over two years and that Faria was aware of this relationship. *Conrad Decl.* ¶ 108.

**Link to doc 18 & 29**

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-0099 PSG (MANx) | Date | April 3, 2009 |
|---|---|---|---|
| Title | Aries Associates, Inc. v. L-3 Communications Holdings, Inc., et al. | | |

BIT-500 formula as AeROS 500" and alleged that the products that Conrad now appears to be trying to sell as "AeROS technology" were developed entirely by L-3. *Id.*, Ex. 42.

As noted above, L-3 can only be liable on this claim if its conduct was in fact wrongful. *Korea Supply Co.*, 29 Cal. 4th at 1153. Here, though, it is not entirely clear whether its conduct was wrongful. After all, if L-3 does in fact own *AeROS*™ 501/BIT™-500, then it has every right to contact people to correct misinformation surrounding the origin and ownership of this technology. Put otherwise, the disputed ownership of *AeROS*™ 501/BIT™-500 is fatal to this claim, just as it was fatal to Aries' breach of contract claim.

    4.    <u>Aries' False Advertising Claim</u>

Next the Court considers whether Plaintiff is likely to succeed on its false advertising claim. Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), forbids the use of false designations of origin and false descriptions or representations in the advertising and sale of goods and services. *See New West Corp. v. NYM Co. of Cal., Inc.*, 595 F.2d 1194, 1198 (9th Cir. 1979). The statute provides in pertinent part as follows:

> Any person who shall affix, apply, or annex, or use in connection with any goods or services a false designation of origin, or any false designation or representation and shall cause such goods or services to enter into commerce shall be liable to a civil action by any person who believes that he is or is likely to be damaged by the use of any such false designation or representation.

15 U.S.C. § 1125(a).

Plaintiff argues that Defendant violated section 43(a) by (1) "reverse passing" off *AeROS*™ 501/BIT™-500 as its invention and (2) describing Aries' *StarBright*™ dyes as proprietary to L-3. Each of these arguments is taken up in turn.

Reverse passing off "occurs when a person removes or obliterates the original trademark, without authorization, before reselling goods produced by someone else." *Smith v. Montoro*, 648 F.2d 602, 605 (9th Cir. 1981). In order to recover on a Lanham Act claim for reverse passing off, a plaintiff must prove: (1) that the work at issue originated with the plaintiff; (2) that origin of the work was falsely designated by the defendant; (3) that the false designation of origin was likely to cause consumer confusion; and (4) that the plaintiff was harmed by the

**Link to doc 18 & 29**

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-0099 PSG (MANx) | Date | April 3, 2009 |
|---|---|---|---|
| Title | Aries Associates, Inc. v. L-3 Communications Holdings, Inc., et al. | | |

defendant's false designation of origin. *Lipton v. Nature Co.*, 71 F.3d 464, 473 (2d Cir. 1995). According to Aries, there is evidence that L-3 has falsely designated *AeROS*™ 501/BIT™-500, which Aries believes is a work which originated with Aries. Aries draws attention to Basler's Declaration, in which Basler, a former L-3 employee, recounts an incident that occurred in October 2008. That month, according to Basler, Klimpel, the man who replaced Montulli as director of L-3's BIT program, insisted that she re-label 150 gallons of *AeROS*™ 501/BIT™-500 that was being shipped to the Edgewood Chemical Biological Center ("ECBC") for further testing under the TACTIC program. *Basler Decl.* ¶ 11. Specifically, Klimpel wanted Basler to remove all of the ARIES/*AeROS*™ labels from the five gallon kits in which *AeROS*™ 501/BIT™-500 was being shipped and to replace them with L-3/BIT-500 labels. *Id.* Moreover, Klimpel also directed her to remove references to *AeROS*™ and ARIES' on the packing slips and other statements affixed to the packages, and replace them with references to L-3 and BIT-500. *Id.* Basler testifies that prior to this particular incident, L-3 had shipped the *AeROS*™ formulations to ECBC with labels and shipping documents that stated "*AeROS*™." *Id.*

L-3 argues that this cannot be a case of reverse passing off because it owns the product in dispute. Thus, L-3 contends, Basler was not removing the original trademark without authorization before reselling goods produced by someone else. Rather, she was merely "correcting" the product's label.

Like the preceding three claims, resolution of this issue ultimately turns on whether Aries owns *AeROS*™ 501/BIT™-500. And like the preceding three claims, because Aries has failed to sufficiently demonstrate that it, and not L-3, owns *AeROS*™ 501/BIT™-500, it follows that it has not demonstrated a strong likelihood of success that L-3 has engaged in reverse passing off of *AeROS*™ 501/BIT™-500.

However, that Aries cannot prevail on a reverse passing off claim with respect to *AeROS*™ 501/BIT™-500 does not necessarily mean that it cannot prevail on a reverse passing off claim with respect to Aries' *StarBright*™ dyes.[9] It is Aries' position that L-3 has attempted to pass off Aries' *StarBright*™ dyes as its own. To support this position, Aries cites to Montulli's Declaration, in which he testifies that he received a call from a "senior representative" of the Department of Defense's Joint Program Executive Office for biological and chemical warfare. *Montulli Decl.* ¶ 35. According to Montulli, the senior representative wanted to discuss a briefing that L-3 presented to them at a January 13, 2009 decon meeting. *Id.*

---

[9] L-3 does not dispute that these dyes are proprietary to Aries.

Link to doc 18 & 29

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-0099 PSG (MANx) | Date | April 3, 2009 |
|---|---|---|---|
| Title | Aries Associates, Inc. v. L-3 Communications Holdings, Inc., et al. | | |

While there, L-3 claimed to have invented and been in ownership of not just *AeROS*™ formulations, but also the *StarBright*™ dyes. *Id.* Now L-3 argues that this evidence is nothing more than an "unfounded account of what a nameless Department of Defense ("DoD") employee allegedly told him." But what L-3 fails to do is (1) call into question the credibility of Montulli,[10] and (2) submit credible evidence that contradicts Montulli's testimony.

The Court finds that Montulli's testimony sufficiently demonstrates that L-3 has violated the Lanham Act with respect to its unauthorized use of Aries' *StarBright*™ dyes. L-3 has failed to controvert this evidence. Accordingly, the Court concludes that there is a strong likelihood that Aries will prevail on its Lanham Act claim, insofar as that claim relates to L-3's unauthorized use of Aries' *StarBright*™ dyes.[11]

### 5. Aries' Unfair Competition Claim

Lastly the Court considers whether Aries has demonstrated a strong likelihood of success on the merits with respect to its unfair competition claim. As the Ninth Circuit explained in *Acad. of Motion Picture Arts and Sci. v. Creative House Promotions, Inc.*, 944 F.2d 1446 (9th Cir. 1991), "[a]n action for unfair competition under Cal. Bus. & Prof. Code §§ 17200 *et seq.* is 'substantially congruent' to a trademark infringement claim under the Lanham Act. Under both, the "'ultimate test' is 'whether the public is likely to be deceived or confused by the similarity of the marks.'" *Id.* at 1457 (internal citations omitted).

Here, there is evidence of actual confusion. As noted above, a senior representative of DoD's Joint Program Executive Office for biological and chemical warfare contacted Montulli in January 2009. *Montulli Decl.* ¶ 35. That representative expressed confusion as to how L-3 could claim ownership of Aries' *StarBright*™ dyes. *Id.* Because the evidence establishes there is a likelihood of confusion among consumers, the Court finds that Aries' has demonstrated a strong likelihood of success on the merits of its unfair competition claim.

### 6. Conclusion

---

[10] L-3 argues that Montulli's testimony cannot be trusted because he is a disgruntled former employee. But absent other evidence, the fact that Montulli is a former L-3 employee is not reason enough to call into question his truthfulness.

[11] L-3 does not argue that Aries cannot demonstrate a likelihood of confusion or harm. For that reason, the Court declines to address these prongs of the applicable test.

**Link to doc 18 & 29**

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-0099 PSG (MANx) | Date | April 3, 2009 |
|---|---|---|---|
| Title | Aries Associates, Inc. v. L-3 Communications Holdings, Inc., et al. | | |

In summary, Aries has failed to demonstrate a strong likelihood of success on its trade secrets claim insofar as that claim relates to *AeROS*™ 501/BIT™-500, its breach of contract claim, and its interference with prospective business claim. However, Aries has demonstrated a likelihood of success on its trade secrets claim, its Lanham Act claim and its unfair competition claim, at least insofar as those claims turn on L-3's use of Aries' *StarBright*™ dyes.

      B.      <u>Irreparable Harm</u>

The next step in the Court's analysis is to determine whether Plaintiff has demonstrated a significant threat of irreparable injury, irrespective of the magnitude of the injury." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 725 (9th Cir. 1999). Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction. *Goldie's Bookstore, Inc. v. Superior Court*, 739 F.2d 466, 472 (9th Cir. 1984). Rather, a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief. *Los Angeles Memorial Coliseum Commission v. National Football League*, 634 F.2d 1197, 1201 (9th Cir. 1980).

According to Aries, not only is it entitled to a presumption of irreparable harm in relation to its Lanham Act claim,[12] it can also establish that it has suffered and will continue to suffer a significant threat of irreparable harm. Thus, it can obtain a preliminary injunction in relation to its non-Lanham Act claims. Ultimately, while the Court agrees with Aries that it is entitled to a presumption of harm in relation to its Lanham Act claim, it has failed to demonstrate irreparable harm in relation to its other claims.

As L-3 correctly points out, over the past two years Aries has engaged in extensive discussions with L-3 regarding licensing agreements, particularly with respect to Aries' *StarBright*™ dyes. Presumably, if Aries is willing to license its products to L-3, then any injuries suffered in relation to its unfair competition claim can be compensated by monetary damages. Courts generally do not issue injunctions to protect legal remedies. Indeed, by definition, "irreparable harm" is "certain and imminent harm for which a monetary award does not adequately compensate." *See Jayaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir. 1995). Thus, because adequate compensatory damages are available to Aries, the Court finds that it has failed

---

[12] A showing of likely success on the merits gives rise to a presumption of irreparable harm in trademark cases. *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1100, 1205 n.4 (9th Cir. 2000).

**Link to doc 18 & 29**

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-0099 PSG (MANx) | Date | April 3, 2009 |
|---|---|---|---|
| Title | Aries Associates, Inc. v. L-3 Communications Holdings, Inc., et al. | | |

to demonstrate irreparable harm, at least insofar as that harm relates to its trade secrets and unfair competition claims.

    C.    <u>Balance of Hardships</u>[13]

Next the Court considers whether the balance of hardships favors granting the preliminary injunction. *Dollar Rent A Car*, 774 F.2d at 1374. "[T]he real issue in this regard is the degree of harm that will be suffered by the plaintiff or the defendant if the injunction is improperly granted or denied." *Scotts Co. v. United Industries Corp.*, 315 F.3d 264, 284 (4th Cir. 2002).

Little explanation is needed to support a determination that the balance of hardships in this instance favors granting the preliminary injunction. L-3 does not dispute that Aries is the rightful owner of the *StarBright*™ trademark. Thus, L-3 will not be prejudiced in any way whatsoever if it is prohibited from using a trademark it does not own. L-3 apparently recognizes this, as evident by its indication that it will "stipulate that it will not use ARIES' Starbright [sic] mark in association with L-3's products." *Opp.* 9:23-24.

For these reasons, the Court finds that the balance of hardships favors granting the preliminary injunction.

    D.    <u>Public Interest</u>

Lastly, the Court considers whether granting the preliminary injunction advances the public interest. *Dollar Rent A Car*, 774 F.2d at 1374. The public has a right not to be deceived or confused. Indeed, "the most basic public interest at stake in all Lanham Act cases [is] the interest in prevention of confusion, particularly as it affects the public interest in truth and accuracy." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 730 (3d Cir. 2004).

It is axiomatic that in granting a permanent injunction, the public interest must not be disserved. Where "there is a likelihood of consumer confusion created by the use of confusingly similar marks, it follows that if such use continues, the public interest would be damaged. Conversely, a prohibition upon [defendant's] use of [its] mark[] would eliminate that confusion." *Id.* (internal quotation marks omitted) (edits in original). In this case, the public interest will be

---

[13] As Aries has failed to demonstrate irreparable harm on its trade secrets and unfair competition claim, the remaining analysis is confined to its Lanham Act claim.

**Link to doc 18 & 29**
O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-0099 PSG (MANx) | Date | April 3, 2009 |
|---|---|---|---|
| Title | Aries Associates, Inc. v. L-3 Communications Holdings, Inc., et al. | | |

served by protecting the public from further confusion stemming from L-3's unauthorized use of the *StarBright*™ trademark.

IV.   Conclusion

Based on the foregoing, the Court GRANTS IN PART and DENIES IN PART Aries' motion for preliminary injunction.  The motion is granted on the following limited grounds:

> L-3 and each of its officers, agents, employees, representatives, and all persons acting in concert or participating with them from performing directly or indirectly any and all of the following acts:
>
> > Using ARIES' registered *StarBright* trademark in any marketing or sales materials, presentations, bid proposals, contract reports, or any other documents prepared in furtherance of offering its decontamination products for sale.

It is otherwise DENIED.[14]

**IT IS SO ORDERED.**

---

[14] This ruling effectively renders moot L-3's motion for (1) expedited discovery; (2) an extension of time to oppose Aries' motion; and (3) a continuance.